### THE HENRY BUCK.

### STOKES *v.* THE HENRY BUCK.

*(District Court, D. South Carolina. June 7, 1889.)*

1. DAMAGES—PROXIMATE AND REMOTE.
    The owner of a raft of lumber employed a tug to bring it down to C., where it was to be loaded on a schooner under contract with the charterer. Owing to the tug's negligence the raft was wrecked, delaying the loading of the schooner, and causing the charterer to incur demurrage, which the owner of the raft had to pay. On libel by the latter against the tug he testified that when he engaged it he told the master: "I had a vessel that was delivering with demurrage, and I wanted him to bring this lumber to town with dispatch." The master testified that libelant merely told him that he was in a hurry for the lumber, and wanted it brought down as soon as possible. *Held,* that demurrage was not an item of damages within the contemplation of the parties, and could not be recovered.

2. SAME—ELEMENTS OF DAMAGE.
    Libelant having made diligent efforts to save the raft after it was wrecked, respondent is liable not only for the lumber lost, but also for all proper expenses in saving the remainder.

In Admiralty.   Libel for damages.

For former opinion, see 38 Fed. Rep. 611.

*J. P. K. Bryan*, for libelant.

*J. N. Nathans*, for respondent.

SIMONTON, J.   The libel in this case sought damages consequent upon negligent performance of a contract of towage of a raft of lumber.   After a review of the testimony the court in a former decree held as follows: "This was negligence for which the tug is responsible.   As to the amount for which it is responsible, counsel will be heard on this point, especially as to the liability of the respondent for the demurrage paid to Mr. Halsey by libelant under his contract with him."   Counsel have been heard on these points.

It is necessary to recall the facts.   The tug Henry Buck was engaged by Halsey, as agent of libelant, to go after a raft of lumber on its way from Edisto river to Charleston.   The tug found the raft, towed it on its way, and left it after night-fall in Wappoo cut.   The raft was not made fast, and drifted through the cut into Ashley river, thence down Charleston harbor, and was wrecked on Sullivan's island, at the mouth of the harbor.   The tug made no effort to rescue it or any part of it.   Libelant did.   He saved 190,000 feet out of 220,000.   He caused that which was salved to be brought to Charleston, and delivered to Halsey.   He had a contract with Halsey to deliver to him the whole raft.   Halsey was then loading a schooner with lumber, and relied on the fulfillment of this contract.   In consequence of the delay Halsey was charged with demurrage, which he charged to libelant, who paid it.   The latter seeks to recover from the tug the value of the lumber lost, the expenses incurred in saving that which was rescued, and the demurrage so paid by him.   The tug engaged to go for the raft on Saturday night, went on Monday morning, met the raft the same day, lost it on Monday night, could have gotten it to Halsey on Tuesday morning.   Libelant went after it that morning, worked on it that day, Wednesday, Thursday, and part of Friday.   It reached Halsey on Friday afternoon.   The items are as follows:   Labor of his hands, $110; extra labor, $40; labor in making up the raft anew, $25; time of libelant himself, 6 days, at $10, $60; a tug for towing remains of raft to Charleston, $30; ropes, $60; 30,000 feet of lumber, at $8, $240; demurrage, seven days, at $30, $210.   The raft having gotten adrift by the negligence of respondent, he was responsible for its value at the Charleston market.   This was, as we have seen, $8 per M.   But it was the duty of libelant to use all proper efforts in reducing the loss as much as practicable.   He fulfilled this duty, and saved all but 30,000 feet.   This was a great saving to respondent.   He should pay not only for the lumber lost, but also all proper expense incurred in saving the remainder.   Examining these items, the amount charged for labor seems very large,—$110, $40, $25, $175, for four days.   No serious question is made of these items by respondent.   They are allowed.   The charge of $10 per day for services of libelant is not unreasonable.   He is engaged in large saw-mill business in Colleton.   But there is

an error in the number of days charged. He went after the raft on Tuesday, 18th December. Halsey says it reached him on 21st, (Friday.) Four days is a liberal estimate. Of this item $40 are allowed. The main question, however, is as to the items of demurrage charged by Halsey to libelant, and paid by him,—seven days, at $30 per day. In making up his seven days Halsey began on Tuesday 18th, so the lay-days had expired before that time. The respondent could not at the earliest have gotten the raft to Halsey before Tuesday. It is difficult to understand how he could be made responsible for the demurrage of Tuesday; and, had he put the raft along-side of the schooner on Tuesday, ready for loading, still, during the whole process of loading, the demurrage would have gone on. Be this as it may, we have here an action for damages arising from the negligent performance of a contract. Were we in a common-law court it would be an action on the case in *assumpsit* or an action of tort, but of tort growing out of a contract *quasi ex contractu*. The damages in a case of this kind cannot be varied by the form of action adopted. They are such as naturally and proximately arise from the non-performance of the contract. In other words, the damages to be awarded are such as were in the contemplation of both parties when the contract was made. But for the contract there could be no claim for damages. The legal duty of the respondent to tow and safely care for the raft grew out of the contract, and out of the contract alone. He did not perform the contract. So he did not fulfill the duty assumed by him. This constitutes the breach, and gives the cause of action. The legal consequences which he must suffer depend upon his contract. Mr. Sedgwick, in his book on Damages, (page 112,) gives an excellent summary of the rule:

"Where the contract is to do or to refrain from doing some particular thing, here the rule of the civil law is perhaps the best that can be adopted,—that the party in default shall be held liable for all losses that may fairly be considered as having been in the contemplation of the parties at the time the agreement was entered into; or, in other words, where it appears, or may fairly be inferred, that the party complaining of the non-performance of a contract has, at the time it was entered into, turned the mind of the party whose conduct is complained of to the consequences likely to ensue from default on his part, and such consequences do ensue, he shall be held responsible for them as having stipulated against them."

See, also, *Bowas* v. *Tow-line*, 2 Sawy. 30; *Hadley* v. *Baxendale*, 9 Exch. 353; Suth. Dam. 74. Lord Cockburn, C. J., in *Simpson* v. *Railway Co.*, L. R. 1 Q. B. Div. 274, puts it thus:

"The principal is now settled that, whenever either the object of the sender is specially brought to the notice of the carrier, or circumstances are known to the carrier from which the object ought in reason to be inferred, so that the object may be taken to have been within the contemplation of both parties, damages may be recovered for the natural consequences of the failure of that object."

See, also, *Elbinger* v. *Armstrong*, L. R. 9 Q. B. 473. The question turns, therefore, on a question of fact. Was it brought to the notice of the tug master that the object in sending him for the raft was to save

the libelant from demurrage? Or, put it in another way: Was the circumstance that libelant was dependent upon the arrival of the raft in order to save himself from the consequence of demurrage so known to the tug master that he was compelled to infer that the object in sending him for the raft was to save demurrage? If either of these questions be answered in the affirmative, the tug must pay the demurrage. It seems at first blush extraordinary that the tug master should have undertaken this. He went for the raft on Monday. His pay for towage was $30. Did he understand that if he failed to reach Halsey's dock on Tuesday he would be liable for demurrage $30 for that day and for every other day he delayed delivery? Let us examine the testimony on this point. Halsey acted as the agent for libelant. The libelant was under contract to deliver lumber to him. He made the agreement with the tug master, and knew all about the matter. In reply to the question: "Did you state to him [the master of the tug] any necessity why you wished haste and dispatch?" he answered: "I stated I had a vessel I was loading, and it was important I should have the raft with all possible dispatch." To the question: "What, exactly, did you say you wanted him to do?" "I told him I had a vessel that was delivering with demurrage, and I wanted him to bring this lumber to town with dispatch." The tug master on his part gives this account: "He [Halsey] wanted to know if I could go and assist the rafts down. He said he was in a hurry for the lumber, and he asked me when I thought I could get it down. I told him that depended on when I started, and where I found the lumber. He said, 'All right,' do the best I could, and that was all." On the cross-examination, in answer to the question: "You were to aid in propelling that raft to Charleston?" he replied: "He [Halsey] told me to go up and help bring it down; that was his language." In reply to a similar question on the same examination he said: "I undertook to do what I thought would get it [the raft] here in a hurry." I am not able to conclude from this that the tug master knew that libelant had any concern in the demurrage, nor that he knew the rate of demurrage, nor when the demurrage would begin, nor that the object of sending him for the raft was to save the libelant from demurrage incurred or to be incurred. This item is not allowed. Let the tug be credited with the bills for towing and searching for raft,—both items. Let decree be entered accordingly, costs to follow decree.